## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY H. HEUMANN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>WOODSTREAM CORPORATION, a Pennsylvania corporation,<br><br>     Defendant. | Civil No.   6:19-CV-1077 (GLS/TWD)<br><br><br>Judge |

## CLASS ACTION COMPLAINT

00155060

Plaintiff Henry H. Heumann ("Plaintiff") brings this class action complaint against Defendant Woodstream Corporation ("Defendant" or "Woodstream"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is a consumer protection class action arising out of Defendant's false and misleading advertising of its ultrasonic rodent repeller products.

2.      Defendant markets, sells and distributes a line of ultrasonic mouse and rat repellers under the "VICTOR®" and "VICTOR® PESTCHASER®" brand names (collectively, "Victor Repellers"). Defendant represents and sells the Victor Repellers for a single purpose, which is to effectively drive away and deter rodents from your home without the use of toxic chemicals. Defendant's advertising claims, however, are false, misleading, and reasonably likely to deceive the public.

3.      Each Victor Repeller in Defendant's ultrasonic rodent repeller line, through labeling and packaging, and through Defendant's other advertising and marketing materials, communicates the same substantive message to consumers: that the Victor Repellers provide an effective and nontoxic rodent control that will keep mice and rats from infesting your home. Defendant conveys this uniform rodent deterrent message through its coordinated advertising campaign through which Defendant represents that all a consumer has to do is "plug it in" and the Victor Repellers will "effectively drive[] away rodents by emitting a highly irritating noise that can only be heard by rodents."

00155060

4.     Defendant bolsters its effectivity claims by representing to the public that the efficacy of its Victor Repellers has been proven in the lab and in the field. These representations are designed to induce consumers to believe that Defendant's Victor Repellers effectively repels, reduces and eliminates rodents. The claimed effectiveness as a rodent repeller without the use of toxic chemicals is the only reason a consumer would purchase Victor Repellers.

5.     Defendant's Victor Repellers, however, do not deter or repel mice or rats from infesting a home: commercially available ultrasonic technology simply does not work as a rodent repeller. Multiple scientific studies over a course of several decades have consistently shown that "commercially available ultrasonic pest devices for use in residential applications have not been shown to be effective." These studies apply to Defendant's ultrasonic Victor Repellers and their results constitute material facts to the reasonable consumer who purchases Victor Repellers under a false belief they actually repel rodents.

6.     In light of this overwhelming scientific research, the Federal Trade Commission ("FTC") issued warning letters to more than 60 manufacturers and retailers of ultrasonic pest-control devices.[1] The FTC specifically cautioned manufacturers of ultrasonic rodent repellers that advertisements that market their products' ability to control rodent infestations may be false and deceptive and expose the manufacturers to legal action. Manufacturers were cautioned to have competent and reliable scientific evidence to support such claims.

7.     Defendant's Victor Repellers have been proven ineffective and Defendant has ignored the FTC's warnings. Defendant's rodent repeller efficacy representations are false, misleading and deceptive, and its Victor Repellers are worthless.

---

[1]     *See* Press Release, FTC Warns Manufacturers and Retailers of Ultrasonic Pest-control Devices, (May 3, 2001), https://www.ftc.gov/news-events/press-releases/2001/05/ftc-warns-manufacturers-and-retailers-ultrasonic-pest-control.

00155060

8.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers to halt the dissemination of Defendant's false and misleading representations, correct the false and misleading perception Defendant's representations have created in the minds of consumers, and to obtain redress for those who have purchased any of Defendant's Victor Repellers.

## JURISDICTION AND VENUE

9.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant has marketed, promoted, distributed, and sold the Victor Repellers in New York, rendering exercise of jurisdiction by New York courts permissible.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Venue also is proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this district.

## PARTIES

12.     Plaintiff Henry Heumann is a citizen of the State of Florida, but maintains a vacation home in Herkimer County, New York, where events giving rise to these proceedings arose. Over a period of several years, Mr. Heumann purchased 59 Rodent Repellers. Relying on Woodstream's representations, Plaintiff purchased the product for approximately $14.99 for the

00155060

Classic Pestchaser and $19.99 for a three-pack of the Victor Pestchaser Mini. By purchasing the falsely advertised product, Plaintiff suffered injury-in-fact and lost money.

13.     In October 2017, Mr. Heumann mailed 10 Rodent Repellers to Woodstream and informed Defendant that the units failed to operate as advertised. Defendant informed Mr. Heumann that the Rodent Repellers he sent back purportedly functioned properly and recommended using the Rodent Repellers in conjunction with other means of rodent control. In May 2019, Mr. Heumann again informed Woodstream that its Rodent Repellers have not accomplished their advertised function of repelling rodents, specifically mice, and that mice have destroyed his personal property. Mr. Heumann also informed Defendant that he has spoken with other users of Victor Repellers who reported that their Victor Repellers also did not work as advertised and did not repel any rodents.

14.     The Victor Repellers Plaintiff purchased, like all Woodstream Victor Repellers, cannot provide the advertised benefits because commercially available ultrasonic rodent repellers fail to perform their only intended purpose to repel rodents. Had Plaintiff known the truth about Defendant's misrepresentations and omissions at the time of purchase, Plaintiff would not have purchased Defendant's Victor Repellers.

15.     Woodstream Corporation is a Pennsylvania corporation with its principal place of business located at 60 N. Locust Street, Lititz, Pennsylvania 17543. Vestar Capital Partners, a private equity firm, acquired Woodstream in 2015. Defendant advertises, markets, distributes, and sells the Victor Repellers to tens of thousands of consumers in New York and throughout the United States.

## **FACTUAL ALLEGATIONS**

**I.**     *Defendant's Victor Repellers*

16.     Defendant advertises Victor Repellers as a humane, non-toxic and effective alternative to common rodent control methods like poison and snap and glue traps. Victor Repellers may be purchased at retail locations throughout the United States, directly from Defendant through its website, https://www.victorpest.com/store, and on e-commerce website giants like Amazon.com.

17.     The sole purported rodent deterring aspect in the Victor Repellers is the ultrasonic sound wave that varies in volume and frequency.

**II.**     *Defendant's False and Deceptive Advertising*

18.     Defendant's website, advertisements, product catalogues, and packaging and labeling have consistently conveyed to consumers throughout the United States that Victor Repellers effectively deter mice and rats.

19.     The front packaging panels for the Victor Mini M753SN Ultrasonic Rodent Repeller and the Victor Sonic PestChaser Ultrasonic Rodent Repeller appear as follows:



00155060



     20.    On the back of the packaging, Defendant expressly claims that the Victor Repellers' "High frequency ultrasound repels rodents." The back of the package appear as follows:



# VICTOR® PESTCHASER®
### Rodent Repeller
Repelente de roedores



**INSTRUCTIONS**
Plug PestChaser® into lower socket of 110V-AC wall outlet. Clear all surrounding objects. PestChaser® ultrasound does not travel through walls, furniture, curtains or other objects. PestChaser® is ideal for average size rooms like living rooms, bedrooms, dining rooms, kitchens, etc.

**PESTCHASER® TECHNOLOGY**
- High frequency ultrasound repels rodents.
- PestChaser® emits ultrasound at varying volumes (peaking at 100dB) and varying frequencies (ranging from 32 to 62 kHz).
- This technology prevents rodents from becoming accustomed to the ultrasound.

**FEATURES**
**Economical:** PestChaser® uses less than a penny a day in energy costs
**Easy to Use:** Plugs into any wall outlet
**Clean & Humane:** No chemicals or poisons
**Pet-Friendly:** Cannot be heard by humans and non-rodent pets
**Convenient:** Use anywhere indoors

CAUTION: DO NOT use a PestChaser® around rodent pets such as gerbils, hamsters, guinea pigs, etc.



PRECAUCIÓN: No use el PestChaser® cerca de roedores mascotas tales como los jerbos, hámsters, cobayas, etc.

**INSTRUCCIONES:** Enchufe el PestChaser® en la toma inferior de un tomacorriente de pared de 110 V CA. Aparte todos los objetos circundantes. El ultrasonido del PestChaser® no atraviesa las paredes, los muebles, las cortinas ni otros objetos. PestChaser® es ideal para las habitaciones de tamaño promedio como las salas, dormitorios, comedores, cocinas, etc.

**TECNOLOGÍA PESTCHASER®**
- El ultrasonido de alta frecuencia repele los roedores.
- PestChaser® emite ultrasonido en distintas volúmenes (alcanzando un máximo de 100 dB) y diversas frecuencias (entre 32 y 62 kHz).
- Esto evita que los roedores se acostumbren al ultrasonido.

Model Number: M690S
Contents: 1 Model M690 PestChaser
EPA Est. No.: 84504-VNM-001
Made in Vietnam

**CARACTERÍSTICAS**
- Económico
- Fácil de usar
- Limpio y humano
- Benigna para las mascotas
- Conveniente

840215

Manufactured For:
**W woodstream**

Woodstream Corporation
69 N. Locust St.
Lititz, PA 17543
855-5-VICTOR



For further instructions go to:
**WWW.VICTORPEST.COM**



0 72868 13690 0

00155060

21.     Woodstream repeats this claim in its product catalogue and furthers these representations on its website (www.victorpest.com), including by stating that Victor Repellers' technology "emits ultrasound at varying volumes … and varying frequencies," which "prevents rodents from becoming accustomed to the ultrasonic sound" and that the Defendant goes as far as claiming that its "electronic mouse repellents are capable of preventing a rodent infestation before it can even start." Defendant represents that the Victor Repellers produce "scientifically proven results that show how effective this repellent can be;" that "lab results show that food consumption was reduced by 67% in treated chambers and rodent tracking board activity decreased by 21%;" and that "[f]ield testing offered similar results by repelling rodents from protected areas over 81% of the time."[2]

22.     These "scientifically proven results," however, are a product of Defendant's internal and uncontrolled tests. The methods used during these tests, or the means to measure the efficacy are not available anywhere on Defendant's website or anywhere in the public domain. They have not been subjected to peer review and haven't been published, even informally. In sum, and given the repeated results of other peer-reviewed, scientifically valid research, representations about these tests as scientific proof is highly misleading, and these tests do not provide a reliable scientific basis for any of Woodstream's claims about the efficacy of its Victor Repellers.

23.     Based on the current and former representations contained on Defendant's Victor Repellers' packaging, labeling and on the Products' website, the advertising, including labeling, for the Victor Repellers are intended to induce a common belief in consumers that Victor Repellers are proven and capable of repelling rodents like mice and rats.

---

[2]     WOODSTREAM CORPORATION, https://www.victorpest.com/victor-pestchaser-rodent-repellent-with-nightlight-and-outlet (last visited Jul. 19, 2019).

00155060

**III.**   *Scientific Studies Confirm that Over-the-Counter Ultrasonic Pest Repellers Are Not Effective and Defendant's Efficacy Representations Are False, Deceptive, and Misleading*

24.     Despite Defendant's representations, numerous scientific studies confirm that ultrasonic pest devices are not effective for their only purpose – repelling rodents.

25.     An October 2015 paper from the University of Arizona's College of Agriculture & Life Sciences concluded that "Commercially available sonic pest devices for use in residential applications have not been shown to be effective in scientific studies."[3] According to the researchers, "track-record of sonic pest devices has been questionable" since the 1960's and 1970's.[4] The authors explained that rodents' "dislike [of the ultrasonic sounds] diminished over time, especially after a reliable food source was discovered near the sonic device. Even after the food source was removed [sic] the rats and mice continued to explore the room with ultrasonic sound, expressing habituation to the sound."[5]

26.     A study published by University of Nebraska in 1990, concluded that "frightening techniques," including use of ultrasonic devices, "rarely have any appreciable effects on small rodents."[6] Echoing similar findings from earlier studies, the authors again concluded that "rodents habituate to [ultrasonic noise] and will feed or nest alongside the operating devices."[7]

---

[3]     Nicholas Aflitto and Tom DeGomez, *Sonic Pest Repellents*, Univ. of Arizona – Cooperative Extension, College of Agriculture & Life Sciences, AZ1639 (Oct. 2015), available at https://extension.arizona.edu/sites/extension.arizona.edu/files/pubs/AZ1639-2015.pdf

[4]     *Id.*

[5]     *Id.*

[6]     Ann E. Koehler, Rex E. Marsh, Terrell P. Salmon, *Frightening Methods and Devices/Stimuli to Prevent Mammal Damage – A Review*, University of Nebraska – Lincoln, at 171 (Mar. 1990), available at https://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14

[7]     *Id.*

00155060

The authors also observed that "[t]here have been so many failures reported with high-frequency sound that little can be said in favor of such devises."[8]

27.     A 1998 study published by Utah State University also concluded that mice and rats "become accustomed to new sounds and thus tend to ignore them," rendering ultrasonic repellers ineffective.[9] Due to the rodents' adaptability to sound, the study reiterated, "scientific evidence clearly shows that these devices are not useful in repelling rats or mice."[10]

28.     In November 2017, the Office for Science and Society at McGill University published an article summarizing decades of research into efficacy of ultrasonic soundwave emitting devices to control rodent infestations. The conclusion? "[T]hese devices have never been proven to actually work."[11]

## IV.     *The FTC Issues a Warning to Manufacturers to Stop Employing Deceptive Marketing Representations about Efficacy of Ultrasonic Repellers*

29.     Between 1985 and 1997, the FTC prosecuted six manufacturers and retailers for making claims about the effectiveness of ultrasonic devices as rodent repellers.[12] The FTC alleged the following claims were false and unsubstantiated:

- Eliminates rodent infestations;

- Serves as an effective alternative to conventional pest-control products;

---

[8]      *Id.*

[9]      Ben C. West and Terry A. Messmer, *Commensal Rodents*, Utah State University Extension, NR/WD/010, available at https://digitalcommons.usu.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1995&context=extension_histall

[10]     *Id.*

[11]     Cassandra Lee, *Are ultrasonic pest repellers effective?* McGill University Office of Science and Society, Nov. 17, 2017, available at https://www.mcgill.ca/oss/article/technology-you-asked/are-ultrasonic-pest-repellers-effective (last visited July 19, 2019).

[12]     *See* Press Release, FTC Warns Manufacturers and Retailers of Ultrasonic Pest-control Devices, (May 3, 2001), *supra.*

00155060

- Increases or assists the effectiveness of other pest-control methods; and

- Scientific tests prove product effectiveness.

Defendant has made every one of these false and misleading claims in its labeling, packaging, marketing materials, and on its website.

30.    In May 2001, the FTC sent warning letters to 60 manufacturers and retailers of ultrasonic pest-control devices. The FTC advised the manufacturers that any efficacy claims must be substantiated by reliable scientific evidence. The FTC also urged manufacturer and retailers to examine their advertising and ensure they have competent and reliable scientific evidence to support their effectiveness claims.[13] No such evidence, however, exists.

31.    As the seller of Victor Repellers, Defendant possesses specialized knowledge regarding their effectiveness, and Defendant is in a superior position to know whether its Victor Repellers work as advertised. Specifically, Defendant knew, but failed to disclose, or should have known, that Victor Repellers do not actually repel mice or rats, and that well-conducted clinical studies have found that commercially available ultrasonic rodent repellers do not work.

32.    Plaintiff and the Class members have been and will continue to be deceived or misled by Defendant's false and deceptive representations about the efficacy of ultrasonic devices as a rodent repeller.

33.    Defendant's representations and omissions were a material factor in influencing Plaintiff's and the Class members' decision to purchase the Victor Repellers. In fact, the only purpose for purchasing the Victor Repellers is to obtain the represented benefits of the product.

34.    Defendant's conduct has injured Plaintiff and the Class members because Defendant's Victor Repellers do not repel mice or rats as advertised.

---

[13]     *Id.*

00155060

35.     Had Plaintiff and the Class members known the truth about Defendant's Victor Repellers, they would not have purchased them and would not have paid the prices they paid for the Victor Repellers.

36.     Plaintiff and each Class member were harmed by purchasing Defendant's Victor Repellers because none of them are capable of providing their advertised benefits. As a result, Plaintiff and each Class member lost money and property by way of purchasing Defendant's ineffective and worthless Victor Repellers.

## CLASS DEFINITION AND ALLEGATIONS

37.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers who purchase one or more Victor Repellers in New York pursuant to Federal Rules of Civil Procedure rules 23(a), (b)(2) and (b)(3) and seeks certification of the following Class:

**New York-Only Class**

All persons who purchased in the state of New York any of the Victor Repellers for personal use between August 1, 2015, and the date notice is disseminated.

38.     Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Victor Repellers for resale, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

39.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has sold many thousands of units of Victor Repellers to Class members.

41. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    (a)    Whether the representations discussed herein that Defendant made about its Victor Repellers were or are untrue, misleading, or likely to deceive;

    (b)    Whether Defendant's conduct violates public policy;

    (c)    Whether Defendant engaged in false or misleading advertising;

    (d)    Whether Defendant's conduct constitutes violations of the laws asserted herein;

    (e)    Whether Plaintiff and other Class members have been injured and the proper measure of their losses as a result of those injuries; and

    (f)    Whether Plaintiff and other Class members are entitled to injunctive, declaratory, or other equitable relief.

42. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

43. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

44.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**
Defendant has acted or refused to act on grounds generally applicable to Plaintiff and other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

45.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I

**VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW § 349
FOR DECEPTIVE ACTS AND PRACTICES**

46.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

47.     Plaintiff and other Class members are "persons" within the meaning of N.Y. GBL § 349(h).

00155060

48.     The N.Y. GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." Defendant's conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL § 349. Furthermore, Defendant's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing Victor Repellers, was conduct directed at consumers.

49.     Defendant engaged in false or deceptive advertising and knew that Victor Repellers would not deter mice or rats, would not control or prevent rodent infestation, would not reduce or eliminate existing mouse or rat presence, and were not suitable for their intended use.

50.     In failing to disclose the ineffectiveness of its Victor Repellers, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

51.     Defendant was under a duty to Plaintiff and other Class members to disclose the ineffectiveness of the Victor Repellers because:

52.     Defendant was in a superior position to know the true state of facts about the Victor Repellers' ineffectiveness;

53.     Defendant made representations about the efficacy of Victor Repellers unsubstantiated by any competent scientific evidence; and

54.     Defendant actively concealed the ineffectiveness of its Victor Repellers from Plaintiff and other Class members at the time of sale and thereafter.

55.     The facts concealed or not disclosed by Defendant to Plaintiff and other Class members are material because a reasonable person would have considered them to be important

16

in deciding whether or not to purchase Defendant's Victor Repellers. Had Plaintiff and other Class members known that Victor Repellers failed to repel or eliminate rodent infestations, as described herein, they would not have purchased the Victor Repellers.

56.     Defendant continued to conceal the ineffectiveness of the Victor Repellers even after Plaintiff informed it that his Victor Repellers, as well as Victor Repellers purchased by others, did not work, and that mice destroyed his personal property. Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

57.     Plaintiff also asserts a violation of public policy arising from Defendant's withholding of material facts from consumers and engaging in false or deceptive advertising. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

58.     Defendant's omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they affect consumer's choice and violate consumer protection laws, warranty laws and the common law as set forth herein.

59.     Thus, by its conduct, Defendant has engaged in consumer-oriented deceptive acts or practices within the meaning of the N.Y. GBL § 349.

60.     Defendant's consumer-oriented deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

61.     As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and other Class members have suffered and will continue to suffer actual damages.

62.     As a result of Defendant's willful and knowing conduct, Plaintiff and other Class members suffered injury. Accordingly, Plaintiff seeks recovery of actual damages or $50,

17

whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. GBL § 349.

## COUNT II

### VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW § 350 FOR FALSE ADVERTISING

63.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

64.     The N.Y. GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Defendant's conduct, as described above and below, constitutes "false advertising" within the meaning of the New York GBL § 350, which is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity … to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual…." N.Y. GBL § 350-a.

65.     Plaintiff and other Class members purchased Defendant's Victor Repellers on the belief that they would repel mice and rats. Indeed, no consumer would purchase a rodent repeller unless he or she believed it would repel rodents.

66.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Victor Repellers inasmuch as they misrepresent that: "High frequency ultrasound repels rodents"; "rodent activity is reduced in 6-10 days"; "electronic mouse

18

repellents are capable of preventing a rodent infestation before it can even start"; "scientifically proven results that show how effective this repellent can be"; "lab results show that food consumption was reduced by 67% in treated chambers and rodent tracking board activity decreased by 21%"; "Field testing offered similar results by repelling rodents from protected areas over 81% of the time."

67.     Defendant's Victor Repellers, however, are worthless and cannot provide their advertised benefits. Accordingly, Plaintiff and other Class members received less than what they bargained and/or paid for.

68.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

69.     Defendant's conduct constitutes multiple, separate violations of N.Y. GBL § 350.

70.     59. Defendant made the material misrepresentations described herein in its advertising, and on Victor Repellers' packaging, labeling and marketing materials.

71.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Victor Repellers were and continue to be exposed to Defendant's material misrepresentations.

72.     As a result of Defendant's recurring "false advertising," Plaintiff and other Class members suffered injury. Accordingly, Plaintiff seeks recovery of three times the actual damages up to $10,000, or $500, whichever is greater, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs pursuant to N.Y. GBL § 350-e.

00155060

**COUNT III**

**BREACH OF WRITTEN WARRANTIES IN VIOLATION OF
MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301,** *et seq.*

73.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

74.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

75.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) - (5).

76.     Victor Repellers are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

77.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty or implied warranty.

78.     Defendant's representations, as described herein, that Victor Repellers sold to Plaintiffs and other Class members were a "rodent repeller" and that "rodent activity is reduced in 6-10 days" after plugging the device in, and that Victor Repellers "effectively drive[] away rodents by emitting a highly irritating noise that can only be heard by rodents" are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

79.     Defendant breached the warranties as described herein. Contrary to Defendant's representations, Plaintiff's and other Class members' Victor Repellers did not work as warranted: they did not repel mice or rats and did not reduce rodent populations where used. As such, Plaintiff's and other Class members' Victor Repellers do not function as promised.

80.     All conditions precedent have occurred or been performed. Defendant had actual notice of its breach of warranty. Defendant knew before the time of sale to Plaintiff and other

20

Class members, or earlier, that Victor Repellers, like all commercial ultrasonic rodent repellers, were not an effective method to repel, reduce or prevent rodent infestations. Through consumer complaints, FTC warnings, decades of scientific research, internal product testing, and past experience, Defendant learned that its Victor Repellers did not work as advertised. The existence and ubiquity of ineffectiveness of ultrasonic rodent repellers is illustrated by the numerous scientific studies, scientific articles, FTC enforcement actions, publicized consumer complaints and disputes.

81.     Defendant's unlawful conduct, as described above, was the foreseeable and actual cause of Plaintiff's and other Class members suffering actual damage on account of receiving a rodent repeller that did not actually repel any rodents.

82.     Plaintiff and other Class members paid for a rodent repeller that was supposed to meet certain specifications. When they received a rodent repeller that did not conform to these specifications, unfit for its ordinary use and not merchantable, and which fell below the standards set by and described in Woodstream's representations, Plaintiff and other Class members were damaged on account of receiving a rodent repeller worth less than as represented.

**COUNT IV**

**BREACH OF EXPRESS WARRANTY UNDER NEW YORK LAW**

83.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

84.     Through the product labeling, Defendant provided all purchasers of Victor Repellers with the express warranty described herein, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under New York law.

00155060

85.     Defendant expressly warranted that its Victor Repellers were a "rodent repeller", that "rodent activity is reduced in 6-10 days" after plugging the device in, and that Victor Repellers "effectively drive[] away rodents by emitting a highly irritating noise that can only be heard by rodents." Defendant's representations regarding Victor Repellers' efficacy had the natural tendency to induce Plaintiff and other Class members to purchase the Victor Repellers.

86.     Defendant breached the express warranty through the acts and omissions described above.

87.     As detailed above, Plaintiff Heumann notified Woodstream of the breach and gave it a reasonable opportunity to cure its breach of written warranty.

88.     As a result of Defendant's breach of the applicable express warranties, purchasers of Victor Repellers suffered an ascertainable loss of money and property. As a result of Defendant's breach of the express warranty, Plaintiff and other Class members are entitled to legal and equitable relief against Defendant, including actual damages, attorney's fees, costs of suit, and other relief as appropriate.

## COUNT V

## UNJUST ENRICHMENT

89.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

90.     As a direct and proximate result of its failure to disclose that its Victor Repellers were ineffective in repelling, reducing or eliminating rodent infestations, Woodstream has profited through the sale of Victor Repellers. Although Victor Repellers are sometimes purchased on e-commerce platforms and unaffiliated retailers, the money from the sales flows directly to Woodstream, on which it confers an unjust, substantial benefit.

00155060

91.     As a result of the Woodstream's unjust enrichment, Plaintiff and Class members have suffered damages.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair and fraudulent business practices;

C.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

D.     Ordering damages for Plaintiff and the Class in the amount of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, for violations of N.Y. GBL § 349;

E.     Ordering damages for Plaintiff and the Class in the amount of actual damages or $500, whichever is greater, discretionary treble damages up to $10,000, for violations of N.Y. GBL § 350;

00155060

F.      Ordering punitive damages for Plaintiff and the Class;

G.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and other Class members;

H.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

I.      Ordering such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 28, 2019                By:     s/  John A. Maya

John A. Maya, Esq.
510 Bleecker Street
Utica, New York 13501
Tel: (315) 733-0455 / (315) 749-7021
johnmaya.law@gmail.com

BLOOD HURST & O'REARDON, LLP
Timothy G. Blood (*pro hac vice forthcoming*)
Aleksandr J. Yarmolinets (5157367NY)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619-338-1100
tblood@bholaw.com
ayarmolinets@bholaw.com

*Attorneys for Plaintiff*